[S. F. No. 3344. Department Two.—September 22, 1903.]

In the Matter of the Estate of JOSEPH ROSS, Deceased. MEDA F. FREAR et al., Appellants, v. ETHEL ROSS, a Minor, Respondent.

ESTATES OF DECEASED PERSONS—DISTRIBUTION—PETITION TO VACATE— PRETERMITTED GRANDCHILD.—The superior court has power, under section 473 of the Code of Civil Procedure, to relieve a preter- mitted minor grandchild of a deceased testator from the effects of a decree of distribution under the terms of the will, which omits any provision for such grandchild, who appears to be the sole issue of a deceased son, not living at the time of the execution of the will, and to be but twelve years of age, and to have had no actual notice of the proceedings in the estate, and not to have been rep- resented therein, and whose existence was not known to the court, though known to the executrix and other devisees, and whose appli- cation for such relief was promptly made and diligently prosecuted after discovery of the rights of the minor to an interest in the estate.

ID.—WANT OF DILIGENCE NOT IMPUTED TO CHILD.—Want of diligence in ascertaining the rights of a minor in an ancestor's estate is not to be imputed to a child of tender years, when moving to set aside a decree in the statutory time; nor can such child, though knowing of the will, and that it was being probated, be deemed to have known the legal effect of its provisions upon her rights, or be con- cluded by the decree of distribution.

ID.—LIBERALITY OF COURTS.—Courts are always inclined to be liberal in relieving parties laboring under a disability from the effect of

[1] 63 Am. Dec. 134.

a decree which appears to be unjust, and which deprives a party of his rights; and the lower court is warranted in vacating it upon diligent application and a reasonable showing. Under such circumstances stringent rules should not be applied to sustain a wrong but liberally applied to protect a right.

ID.—SOUND DISCRETION.—In such cases, whether good and sufficient cause is shown for setting aside the decree, is a matter addressed to the sound discretion of the court; and this court will not interfere unless for clear and manifest abuse of discretion. In this case, discretion was wisely exercised in setting aside the decree.

ID.—EVIDENCE—DEATH OF FATHER OF GRANDCHILD—PRESUMPTION.— *Held,* that the evidence is sufficient to show that the father of the omitted grandchild was dead at the time of the execution of the will, and that, as he had not been heard from as living for more than five years prior thereto, the presumption of law is that he was then dead.

ID.—CONSTRUCTION OF CODE—RIGHTS OF PRETERMITTED GRANDCHILD— MISTAKES—LEGACY TO DECEASED FATHER.—Under section 1307 of the Civil Code, where the omission of a testator to provide in his will for the issue of any deceased child does not appear to have been intentional, such issue must have the same share in the estate by succession as if the testator had died intestate. The fact that the testator, under mistake, made a legacy to the father, whom he believed to be living,· but who was in fact then actually dead, is immaterial, since such legacy lapsed under section 1343 of the same code, and cannot affect the omission to provide for the omitted grandchild.

ID.—DISTINCTION BETWEEN "DEVISE" AND "LEGACY."—The Civil Code everywhere distinguishes between a "devise" of real property, and a pecuniary "legacy." Section 1310 of the Civil Code providing for the taking under the will by lineal descendants of a child or other relation of the testator, to whom estate is "devised," has no application to a case of lapsed legacy to a deceased child, constituting an omission to provide for his issue.

ID.—REDISTRIBUTION TO OMITTED HEIR—EFFECT OF SPECIFIC DEVISE.— The devisee of a specific devise who is a stranger in blood to the testator, is not protected against contribution to the share of an omitted heir on redistribution, under section 1308 of the Civil Code, where such devise is unattended by any language manifesting an obvious intention that under all circumstances such devise must be kept intact, and where the *only obvious intention expressed is that* the testator created the devise in favor of such devisee.

APPEAL from a final decree of distribution of the estate of a deceased testator. J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

Campbell, Metson & Campbell, for Meda F. Frear and Mary E. Hallett, Appellants.

The facts do not show a presumption of the death of Joseph L. Ross. (*Dowd* v. *Watson*, 105 N. C. 476;[1] *Flynn* v. *Coffee*, 12 Allen, 133; *People* v. *Stokes*, 71 Cal. 267; *Ashbury* v. *Sanders*, 8 Cal. 62;[2] *Insurance Co.* v. *Stevens*, 71 Fed. 258; *Whiting* v. *Nicholl*, 46 Ill. 230.[3]) The intention to provide for the children of the deceased child is negatived by implication from the expressed intention to provide for the child. (*Payne* v. *Payne*, 18 Cal. 292, 299; *Estate of Callaghan*, 119 Cal 571; *In re Stebbins*, 94 Mich. 304;[4] *Estate of Garraud*, 35 Cal. 336; *In re Stevens*, 83 Cal. 323; *In re Salmon*, 107 Cal. 615;[5] *Hurley* v. *O'Sullivan*, 137 Mass. 86; *Guitar* v. *Gordon*, 17 Mo. 408; *Nutter* v. *Vickery*, 64 Me. 490; *Barnes* v. *Huson*, 60 Barb. 598; *Minter's Appeal*, 40 Pet. 111; *Winter* v. *Winter*, 5 Hare, 306; *Mower* v. *Orr*, 7 Hare, 473.) The case is covered by section 1310 of the statute, according to the proper intention. (*Estate of Pfuelb*, 48 Cal. 643; *Blackman* v. *Wadsworth*, 65 Iowa, 80; *Bramell* v. *Adams*, 146 Mo. 70; 2 Woerner on American Law of Administration, 2d ed., sec. 435.) It is to be presumed the legislature intended the most reasonable and beneficial construction of their acts. (*Pearce* v. *Atwood*, 13 Mass. 343; *Commonwealth* v. *Kimball*, 24 Pick. 370; *Donaldson* v. *Wood*, 22 Wend. 397; *In re Chapman*, 166 U. S. 667.)

George C. Sargent, and E. B. Stanwood, for Harriet C. Babson, Appellant.

There is no affidavit of merits, which is indispensable on motion to vacate a judgment. (*Nevada Bank* v. *Dresbach*, 63 Cal. 324; *Jones* v. *Russel*, 3 How. Pr. 320; *Mowry* v. *Hill*, 11 Wis. 146.) The identity of the heirs was settled by the original decree of distribution. (*Mulcahey* v. *Dow*, 131 Cal. 76, 77, 78.) The remedy of the defrauded party is to hold the wrong-doer as a trustee. (*Sohler* v. *Sohler*, 135 Cal. 323, 328.[6]) A specific devisee should not be required to contribute to a pretermitted heir. (*Bowen* v. *Hoxie*, 137 Mass. 527, 530.)

[1] 18 Am. St. Rep. 920.          [4] 34 Am. St. Rep. 345.
[2] 68 Am. Dec. 300.          [5] 48 Am. St. Rep. 164.
[3] 92 Am. Dec. 248.          [6] 87 Am. St. Rep. 98.

I. I. Brown, Gavin McNab, and Vogelsang & Brown, for Respondent.

The evidence shows a legal presumption of the death of Joseph L. Ross when the will was made. (*People* v. *Stokes,* 71 Cal. 267; *Garwood* v. *Hastings,* 38 Cal. 223; *People* v. *Feilen,* 58 Cal. 218; *Ashbury* v. *Sanders,* 8 Cal. 62-65;[1] *Whiting* v. *Nicholl,* 46 Ill. 230;[2] *Montgomery* v. *Bevens,* 1 Saw. 660; *Davie* v. *Briggs,* 97 U. S. 633; *Insurance Co.* v. *Stevens,* 71 Fed. 261; Lawson on Presumptive Evidence, pp. 200, 203, 209.)    The case is covered by section 1307 of the Civil Code as to the rights of a pretermitted heir.    (*Estate of Garraud,* 35 Cal. 336; *Estate of Utz,* 43 Cal. 200; *Bush* v. *Lindsey,* 44 Cal. 121; *Estate of Wardell,* 57 Cal. 492, 493; *In re Stevens,* 83 Cal. 323;[3] *In re Barter,* 86 Cal. 444; *In re Salmon,* 107 Cal. 614-616;[4] *Estate of Callaghan,* 119 Cal. 575; *Chace* v. *Chace,* 6 R. I. 407;[5] *Pounds* v. *Dale,* 48 Mo. 270; *Gage* v. *Gage,* 29 N. H. 533.)    Section 1310 of the Civil Code relative to a "devise" is inapplicable.    The "legacy" to the deceased father was void *ab initio,* and was ineffective. (*Lindsay* v. *Pleasants,* 39 N. C. 320-322; *Scales* v. *Scales,* 59 N. C. 163-166; *Twitty* v. *Twitty,* 90 N. C. 646; *Almy* v. *Jones,* 17 R. I. 271.)

LORIGAN, J.—Joseph Ross died October 27, 1898, leaving a will dated March 12, 1898, which was duly admitted to probate, in the provisions of which occurs this clause: "Thirdly. I give and bequeath to my two sons, Joseph L. Ross and John M. Ross, the sum of ten dollars each, and no other part or portion of my estate."    After a special devise to a stepdaughter, he left the remainder of his estate to two daughters. The estate was duly administered, and on October 20, 1899, a decree of distribution was made and entered in conformity with the terms of the will.

On December 20, 1899, on application of the respondent, Ethel Ross, a minor, and only child of Joseph L. Ross, a son of the testator, mentioned in the above clause of the will, said decree was set aside, and she was allowed to file a petition, in which she claimed to be a pretermitted heir of Joseph Ross,

---

[1] 68 Am. Dec. 300.                [4] 48 Am. St. Rep. 164.
[2] 92 Am. Dec. 248.                [5] 78 Am. Dec. 446.
[3] 17 Am. St. Rep. 252.

the testator, as sole issue of his son, the said Joseph L. Ross, who she claimed was dead at the time of the execution of the will, and prayed that as such heir one third of the estate be distributed to her. Her petition was contested by the devisees in the will, but upon the hearing the court found that said Joseph L. Ross, her father, left his home in San Francisco in 1888 and was last heard of in the state of Washington in 1889; that he had died prior to March 12, 1898, the date of the will; that the testator unintentionally omitted to provide for her in his will, and decreed that she was entitled to receive on distribution the share she would have received had said testator died intestate, and accordingly, awarded her by such decree an undivided one third of the whole of the residue of the estate.

This appeal is from said final decree of distribution, and is presented on a bill of exceptions, from which it appears that no proof was made of the actual death of said Joseph L. Ross, but as the evidence showed he had not been heard from for seven years subsequent to 1888, the presumption of law is, that he was dead long prior to the making of the will.

1. The appellants insist that the court erred in vacating the decree of October, 1899.

The verified petition of the guardian *ad litem* of Ethel Ross (appointed after the decree of October 20th was entered) to set aside said decree, showed that the minor was but twelve years of age when the decree was entered; that she was not actually represented in the proceedings in the settlement of the estate, either by guardian or attorney; that no actual notice of any kind was given her in said matter; that the executrix in her report filed at the time of the petition for distribution stated that Joseph L. Ross (her father) left California over ten years previously; had never been back; that diligent search, especially since the death of testator, had been made to trace his whereabouts, but nothing could be discovered, and that he was believed to be dead; that said executrix—a devisee—and the other devisees and legatees under the will, knew at the time the decree was made that said minor was living in San Francisco; but at no time called the attention of the court to this fact; that the guardian *ad litem* had no positive information of the rights of said minor until about

the time of his appointment.  The petition further set out her
claim to one third of the estate, and there was attached thereto
and filed as part thereof, a verified "opposition and petition
for distribution as pretermitted heir, of Ethel Ross, a minor."

It is claimed this showing was insufficient, but we do not
deem the point tenable.  This application was made within a
month after the original decree of distribution was entered;
and it seems to have been presented and prosecuted with all
diligence after the discovery of the minor's alleged right to
an interest in the decedent's estate.  Under section 473 of the
Code of Civil Procedure the court had a right, on a sufficient
showing, to relieve her from the effects of the decree, on the
ground of inadvertence or excusable neglect.

The statements in the petition were not challenged.  The
minor was but twelve years of age, and had no actual notice
of any proceedings in the estate, and was not represented at
any stage of them.  In fact her existence, while known to the
executrix and the other devisees, was at no time imparted to
the court, and this silence not only operated to preclude any
inquiry by the court into the rights of the minor, or to take
any measures so that they might be conserved, but to actually
further the interests of the devisees in securing to themselves
such portion of the estate as would otherwise have gone to the
minor upon distribution.

Nor can want of diligence in ascertaining what her rights
in an ancestor's estate are, be imputed to a child of her ten-
der years, when moving to set aside a decree under the above
section, within the statutory time.  And even if she did, in
fact, know that her grandfather had left a will, and its
terms, and that it was being probated, it would be the height
of absurdity to say, that she must be deemed to have known,
at her age, the legal effect of its provisions upon her rights,
and to be concluded by the decree of distribution, because she
did not assert them prior to its entry.

Courts are always inclined to be liberal in relieving parties
laboring under a disability from the effect of a decree which
appears to be unjust, and which deprives a party of his rights,
and the lower court is warranted in vacating it upon dili-
gent application and a reasonable showing.

Under such circumstances stringent rules should not be

applied to sustain a wrong, but liberally applied to protect a right. In cases like the present, whether good and sufficient cause is shown for setting aside the decree, is a matter addressed to the sound discretion of the lower court, and we will not interfere unless for clear and manifest abuse of it. We perceive no abuse of discretion in the present case; we are rather of the opinion that it was wisely exercised.

2. It is next insisted that the evidence was insufficient to establish the death of Joseph L. Ross at the date of the making of the will. There is no necessity for an extended discussion of the evidence on this point. It is sufficient to say that it appears to be all one way and in support of his death. He left San Francisco for the state of Washington in the winter of 1888, in ill-health. The last letter received by his wife was in July, 1889. During this period of about eight months he wrote repeatedly to her. These letters, introduced in evidence, were very affectionate, manifested deep interest in, and solicitude for her and their child—discussed his continued ill-health, and closed with the promise to write again. This was the last she ever heard from him. There is no pretense that any one else has ever heard from him since. There was evidence that the testator, about the time of making the will, said that he had heard his son Joseph L. was living in La Grange, Illinois. There was also an additional rumor that he had moved to Chicago. Upon full investigation, however, it was discovered that there was nothing in the rumors. These investigations were prosecuted both on behalf of the appellants and the respondent. An individual who lived in La Grange, and moved from there to Chicago,—one John Watson, —testified in the case that he lived in both places, at La Grange from 1893 to 1898, and while there he was sometimes called Joe Ross; but there was other satisfactory evidence to show that he was quite commonly known in both places by the name of Joseph L. Ross, and stopped at the identical residences where it was rumored that the Joseph L. Ross, in question here, was living, and that no other person known as Ross lived at those places during such times.

3. This brings us now to a consideration of the principal point on this appeal, which is, whether the decree of the lower court, distributing one third of the estate of the testator to

the respondent, as a pretermitted heir of her deceased grand-father, can be sustained.

In the solution of this question it will be necessary to examine the respective sections of the Civil Code under which it is claimed the matter is to be determined. The decree of the court in favor of respondent was based upon section 1307 thereof, which provides: "When any testator omits to provide in his will for any of his children, or for the issue of any deceased child, unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator as if he had died intestate, and succeeds thereto as provided in the succeeding section."

It is, however, insisted by appellants that respondent's rights in the estate are not measured by the provisions of that section, but come within the terms of section 1310 of said code, which read: "When any estate is devised to any child, or other relation of the testator, and the devisee dies before the testator, leaving lineal descendants, such descendants take the estate so given by the will, in the same manner as the devisee would have done had he survived the testator."

According to appellant's construction of the will, in the light of the latter section, Joseph L. Ross, the son, was provided in his father's will with a legacy, which, even if he was dead when the will was made, was, nevertheless, valid, and that by virtue of section 1310 such legacy went to his daughter, and hence, taking this legacy under the will as a lineal descendant of her father, she was thus provided for in the testator's will.

It is of no moment to discuss the matter of the validity, or invalidity, of the legacy of the testator to his son who was dead when the will was made. In the view we take of the case that question becomes unimportant, as we are satisfied that section 1310 has no application, in determining the right of respondent to an interest in her grandfather's estate.

If the legacy to the son was valid under the will, it was still simply a legacy, and section 1310 does not apply to legacies, but solely to devises.

In the whole chapter on wills (Civ. Code, secs. 1270-1377) the legislature has, with extreme care and technical accuracy,

CXL. Cal.—19

used the terms "devise" and "legacy" in their well-recognized common-law sense and distinction; the one as a testamentary disposition of land, the other a like disposition of personalty.

And, to accentuate the proposition that the term "devise" is technically used, it is provided by section 1343 of the same code that: "If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute some other in his place, except as provided in section 1310." It is obvious that the terms "devisee" and "legatee" are used in this section with legal accuracy and distinctiveness, and with the same accuracy the exception is limited in section 1310 to a devise. Under section 1343, all devises or legacies lapse, if the devisee or legatee dies before the testator, except as protected and secured by section 1310 to the lineal descendants of any child, or other relation of the testator. This protection, however, by the explicit language of section 1310, is extended solely to devises; legacies are not within its terms. The use of these terms, "devise" and "devisee," "legacy" and "legatee," all through this chapter, with legal exactness, exhibits the intention of the legislature to employ them precisely as defined at common law. Where clear, direct, and explicit terms are used by the legislature, which have had a definite meaning since the beginning of common-law terminology, there can be no room for discussion as to their meaning. Time has marked them too distinctly not to be clearly recognized and understood.

It is strange that the legislature should have limited the application of section 1310 to devises alone, but the limitation has always existed in this state. In the "Act Concerning Wills," passed at the first session of the legislature in 1850, the section is found the same as it stands in the code to-day. (Stats. 1849-1850, p. 179.)

Throughout all these years no change has taken place, and even when adopting the code system in this state, although the present chapter on wills was modeled largely after a similar chapter in the New York Civil Code, the legislature adhered to the exact language in the act of 1850, although the New York code on the same subject provides for both legacies and devises.

As the section of our code applies, then, solely to devises, its effect in the present care is, that as the provision for Joseph L. Ross in the testator's will was a legacy only, and not a devise, respondent took nothing as the lineal descendant of her father under section 1310, and her rights as a pretermitted heir are in no wise affected by its provisions.

Upon the question whether the respondent is within the terms of section 1307:

In examining this point, it is of no moment that the testator, when his will was made, believed his son was alive, and in that belief made mention of him in his will. In contemplation of law, his son was then dead, although, doubtless, his father believed him living. In this he was mistaken, but this mistake cannot affect the rights of the respondent. The section under consideration makes no provision for mistakes. It deals solely with omissions, and plainly and clearly declares what the effect of omissions to provide for a child, or the issue of a deceased child, shall be. The right of the respondent to mention in her grandfather's will, is not made dependent by the terms of the section on whether her grandfather believed, or did not believe, her father was alive, but solely upon the fact whether, at the time the will was made and published, he was dead.

If her father was dead, she, as his issue, was a presumptive heir to her grandfather's estate in her own right. The fact that the testator mentioned his son, who was dead, and who in no proper sense could be his heir, did not meet the requirements of the law that his will must show an intentional omission to provide for the issue of that son. It was not the dead son, but his living issue who was presumptive heir, and whose existence the testator was required to remember in his will, and forgetfulness of which entitled the respondent, under the law, to a share in his estate. The terms of the section seem to be plain and simple; respondent brings herself directly within them; and we are satisfied that the finding of the lower court, that she was entitled to take as a pretermitted heir was right. (*In re Stevens*, 83 Cal. 330;[1] *In re Barter*, 86 Cal. 444; *In re Salmon*, 107 Cal. 616.[2])

In the Barter case it is said: "The object of that section

[1] 17 Am. St. Rep. 252.                    [2] 48 Am. St. Rep. 164.

[Civ. Code, sec. 1307] is not to protect any grandchildren except those who, as presumptive heirs at law, would be entitled, had no will been made, to inherit at the time the will is published and made. That is the time when the children of the testator, or the children of a deceased child, are supposed, if not mentioned in the will, to have been omitted by oversight, because, at such time, their mother being dead, they would be presumptive heirs at law of their grandfather. . . . The statute intended to put a child, or the children of a deceased child, on the same footing at the time when the will is made and published, and when the intentions of the testator are to control in the construction of his will.''

4. The appellant, Harriet C. Babson, while urging the same general grounds for a reversal of the decree as the other appellants, makes the particular point that, as the devise to her is specific, the lower court erred in awarding the respondent an undivided one third of the whole of the residue of the estate; that respondent's share should be taken entirely from the residuary bequest to the two daughters of the testator, and the specific bequest to her exempted from contribution.

Aside from the nominal legacies to John M. and Joseph L. Ross, the will provides, as to the appellant, Harriet C. Babson: ''I give and devise unto Harriet C. Babson of Chelsea, state of Massachusetts, daughter of my second wife, that certain dwelling house and lot situate in said city and county of San Francisco, and particularly bounded and described as follows:'' (Here follows description of lot.) This is all that is said concerning the appellant Harriet C. Babson, or this property, in the will.

The testator then devises and bequeaths all the rest of his property to his two daughters. These embrace the entire testamentary provisions in the will.

Appellant Harriet C. Babson claims that she is entitled to this exemption under section 1308 of the Civil Code, which provides: ''When any share of the estate of a testator is assigned . . . to the issue of a child omitted in the will . . . the same must first be taken from the estate not disposed of by the will, if any; if that is not sufficient, so much as may be necessary must be taken from all the devisees or legatees, in proportion to the value they may respectively

receive under the will, unless the obvious intention of the testator in relation to some specific devise or bequest, or other provision in the will, would thereby be defeated; in such case, such specific devise, legacy, or provision may be exempted from such apportionment, and a different apportionment, consistent with the intention of the testator, may be adopted.''

We do not think appellant is entitled to any exemption by virtue of this section, read in connection with the terms of the will. The general rule announced by the section is, that all devises and legacies must contribute in proportion to value, and that the exemption of a specific devise is only warranted when the *obvious intention* of the testator in relation to it, would be defeated if contribution was required.

This obvious intention must appear from the language in which the specific devise is created, or from the general terms of the will, and we cannot find from either that any such obvious intention, or any such intention, is disclosed. The devise is in very simple words; unattended by any language manifesting an intention that, under all circumstances, this devise must be kept intact, or any other intention than that the testator created it in her favor.

The case of *Bowen* v. *Hoxie*, 137 Mass. 530, cited by appellant, is not in point. While the statute of that state on the same subject has a general similarity to that of ours, the particular difference is that the Massachusetts provision says nothing about *obvious intention* of the testator. This essential difference renders *Bowen* v. *Hoxie* valueless for the purpose of construction.

Aside from this, as the appellant is a stranger in blood to the testator, and the residuary legatees are his daughters, the intention of the testator to exempt this specific devise would have to be very obvious before the court would be warranted in relieving it of all contribution towards the share of the pretermitted heir, and casting that burden entirely on the residuary interest bequeathed to the blood relations.

We perceive no error in the record, and the decree of the lower court is affirmed.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.